[Crim. No. 953. Third Appellate District.—November 27, 1926.]

## In the Matter of the Application of MICHAEL GAVIN for a Writ of Habeas Corpus.

[1] INSANE PERSONS — COMMITMENT — HABEAS CORPUS — EVIDENCE. — A person who has been committed to a state hospital on the ground that he is insane and so disordered in mind as to endanger health, person, and property and that it is dangerous to life, health, person, and property for such person to be at large, and that his condition is such as requires care and treatment in a hospital for the care and treatment of the insane, will not be released on *habeas corpus*, where in such latter proceeding the evidence shows that he is not simply a person who has lost the power of self-control in relation to the use of alcoholic liquors, but that his mentality has been seriously impaired and that he is a subject suffering from a disordered brain.

[2] ID.—MENTAL DISORDER—QUESTION OF FACT—SECTION 2168, POLITICAL CODE.—It is simply a question of fact whether the alleged insane person is or is not suffering from a disordered mental condition, such as requires commitment under section 2168 of the Political Code, and not what causes have primarily superinduced his condition.

[3] ID.—DISCHARGE—ATTITUDE OF STATE OFFICIALS—HABEAS CORPUS. The fact that the officials of the state hospital are ready and

willing to grant the applicant for the writ of *habeas corpus* a leave of absence under conditions that would safeguard the applicant and prevent him from becoming a menace either to himself or to others is not a sufficient reason for an order of discharge by way of a writ of *habeas corpus*.

(1) 29 C. J., p. 105, n. 70, p. 106, n. 80; 32 C. J., p. 684, n. 22. (2) 32 C. J., p. 679, n. 89, p. 684, n. 30 New. (3) 29 C. J., p. 107, n. 97 New.

PROCEEDING on Habeas Corpus to secure release of insane person from state hospital. Writ denied.

The facts are stated in the opinion of the court.

W. F. Stafford for Petitioner.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THE COURT.—The petitioner, by a judge of the superior court of the city and county of San Francisco, was committed to the state hospital for the insane at Napa, state of California, by an order of commitment, dated the twenty-seventh day of October, 1919, and has applied to this court by way of a petition for a writ of *habeas corpus*, to be released from restraint under said commitment and ordered discharged.

The commitment, among other things, recites: That the court, being satisfied from the testimony of the witnesses and of the proof of the matter set forth in the certificate, that said Michael Gavin is insane and so disordered in mind as to endanger health, person, and property and that it is dangerous to life, health, person, and property for such person to be at large, and that his condition is such as requires care and treatment in a hospital for the care and treatment of the insane, commitment therefore ordered.

The record presented to us upon this hearing discloses that an examination of the present mental condition of the petitioner was recently had at a conference of the physicians constituting the medical staff of the Napa state hospital and, also, of an application made by the petitioner to the superior court of the county of Napa for release on *habeas corpus*, and the testimony taken in both of said hearings

is presented to us by way of stipulation of counsel for our consideration. This record shows that the petitioner some years prior to his commitment to the state hospital at Napa had at different times been committed to the state hospital at Stockton, subsequently discharged therefrom and, also, committed to the state hospital at Mendocino and subsequently discharged therefrom. The record in both of said previous commitments set forth that the applicant was suffering from mental deterioration superinduced by alcoholism, his condition being associated with what is called "Arterial sclerosis."

The record shows that the medical staff of the Napa state hospital was willing to grant the applicant a leave of absence, provided some friend or relative would obligate himself to become responsible for the applicant and to take such supervision of him as would prevent the applicant from becoming a menace either to himself, to others, or, in anywise, injurious to life or property; that no relative or friend has consented to become so responsible for the applicant. Upon the hearing before this court oral testimony was taken, which testimony was to the effect that, if granted a leave of absence from said hospital, the applicant was in such a mental condition as not to be able to take care of himself, being more or less irresponsible, and should at all times be under the supervision of someone, who would be able to guard him with the same degree of care that is exercised over patients at the Napa state hospital. The testimony introduced in this case further shows that for a period of about one month during this year the applicant was absent from the Napa state hospital, having left the same without permission, and that his return to the hospital was necessitated by a condition alleged to be that of alcoholism.

[1] The testimony further introduced upon the hearing of this cause and, also, the record presented from the two proceedings herein referred to, leads to the conclusion that the applicant is not simply a person who has lost the power of self-control in relation to the use of alcoholic liquors, but that his mentality has been seriously impaired and that he is now a subject suffering from a disordered brain. This is a condition, of course, rendering the applicant less able to control his appetite for intoxicating liquor, and, in a sense, places him in the class of persons referred to in section

2185c of the Political Code relative to the commitment of persons who have lost the power of self-control in relation thereto, but we think, these facts being admitted, the conclusion that the applicant is not also within the class of persons referred to by section 2168 of the same code, having to do with commitment of persons whose mentality is so far disordered or affected as to render them proper subjects for commitment thereunder, does not necessarily follow, nor does it follow that, because of the disordered mental condition of a person, he is more likely to indulge in alcoholic stimulants, nor does the fact that alcoholic stimulants render one suffering from mental deterioration more injurious or inimical to himself, or the person or property of others, necessitate commitment under section 2185c of the Political Code and not commitment under section 2168 of the same code. [2] It is simply a question of fact whether the subject is or is not suffering from a disordered mental condition, such as requires commitment under section 2168, *supra,* and not what causes have primarily superinduced his condition. The line of demarcation is one of fact and when the facts are ascertained the respective sections apply. In the case at bar it would appear from the testimony that the applicant is so far mentally affected as to require someone to look after and care for him all the time, and that he cannot be safely discharged without someone ready and willing to take the place of supervison now exercised over the patient by the Napa state hospital.

[3] The fact that the officials of the Napa state hospital are ready and willing to grant the applicant a leave of absence under conditions that would safeguard the applicant and prevent him from becoming a menace either to himself or to others is not a sufficient reason for an order of discharge by way of a writ of *habeas corpus.* We find nothing in the case of *In re Harcourt,* 27 Cal. App. 642 [150 Pac. 1001], nor in the other authorities cited, when applied to the case at bar, which would lead to the conclusion that the applicant should be released.

The application is denied and the petitioner remanded.